UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIRK LABADIE,

               Plaintiff,                     Case No. 2:23-cv-11960

v.                                  Honorable Susan K. DeClercq
                                  United States District Judge
GERALD DANCY and ALVIN
HODGES,                         Honorable Kimberly G. Altman
                                  United States Magistrate Judge

               Defendants.

_____/

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS (ECF No. 61),
ADOPTING THE REPORT AND RECOMMENDATION (ECF No. 60),
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(ECF No. 56), AND DISMISSING THE CASE**

In this case, Plaintiff Kirk Labadie alleges that while he was incarcerated at

the Macomb Regional Correctional Facility (MRF), Defendants Gerald Dancy and

Alvin Hodges—both corrections officers at MRF—violated his Eighth Amendment

rights by failing to protect him from an attack by another inmate.

Now before this Court is Magistrate Judge Kimberly G. Altman's Report and

Recommendation (R&R) recommending that this Court grant Defendants' motion

for summary judgment and dismiss Labadie's objections to that R&R. As explained

below, Labadie's objections will be overruled, the R&R will be adopted in full, and

Defendants' motion for summary judgment will be granted.

# I. BACKGROUND

## A. Factual History

On March 6, 2023, Labadie was "in administrative segregation,"[1] within the

A Wing overflow unit at MRF. ECF No. 1 at PageID.3; *see also* ECF No. 56-2 at

PageID.324. According to Labadie, inmates housed in administrative segregation at

MRF were only allowed to leave their cells in handcuffs and escorted by two

---

[1] As neatly explained by Judge Altman:

Under MDOC Policy Directive 04.03.105, "[s]egregation cells are designated cells used to physically separate prisoners with special management needs from the general population and limit that prisoner's movement inside the institution. Such confinement is used to achieve effective administrative management, maximum disciplinary control, and individual prisoner protection." (ECF No. 57-2 at PageID.406). There are three types of segregation: temporary, administrative, and punitive. (*Id.*, PageID.407–410). Temporary segregation is utilized "when it is necessary to remove a prisoner from general population (e.g., pending a hearing for a Class I misconduct violation, classification to administrative segregation, pending an investigation, transfer, etc.)" or as necessary to protect prisoners who are at high risk of sexual victimization. (*Id.*, PageID.407–408). Administrative segregation is used when a prisoner "demonstrates an inability to be managed with general population privileges," is a serious risk to staff or other prisoners, is a serious escape risk, is under investigation by outside authorities for suspected felonious behavior, refuses required medical screening, or "tests positive for HIV infection and is subsequently found guilty of a misconduct for behavior that presents a significant risk of transmitting HIV infection." (*Id.*, PageID.408). Finally, punitive segregation is used when a prisoner must serve a detention sanction for a Class I misconduct. (*Id.*, PageID.410).

ECF No. 60 at PageID.526–27.

corrections officers. *See* ECF No. 57-5 at PageID.484. According to Labadie, sometime before noon that day, "every single [cell] door opened" in the A Wing of MRF. ECF No. 56-2 at PageID.324–25.

Labadie says that he stayed in his cell because he "knew better than to walk out" of his cell and risk getting an "escape charge" for leaving his cell. *Id.* at PageID.324. But shortly after all the cell doors opened, Labadie "felt a presence" in his cell and then either a person or several people started "swinging on [him]." *Id.* at PageID.324–25. Labadie says his shirt was pulled over his eyes during the altercation, so he did not see who was in his cell attacking him. *Id.* at PageID.325. But after the altercation ended, Labadie pulled his shirt "back over [his] head" and saw an inmate named Teeple walking out of Labadie's cell. *Id.* Labadie says that MRF corrections officers did not "come down" to the A Wing until "after [Teeple] was out of [Labadie's] cell," and that it "seemed liked . . . forever" until the officers came and closed the cell doors. *Id.* at PageID.328.

Shortly after the MRF corrections officers arrived in the A Wing, Labadie told both Hodges and Dancy that he needed to go to healthcare to receive treatment for an injury he sustained from hitting his head on the toilet, although the injury was really from the altercation with Teeple. *Id.* at PageID.329–30. Labadie explained that he did not tell the corrections officers about the altercation with Teeple "because [he] didn't want to be considered a rat." *Id.* at PageID.330.  Although Labadie made

- 3 -

several requests to be taken to healthcare, there was a delay of several hours before he received medical treatment. *Id.* at PageID.329.

Labadie says he did not know Teeple before the March 6 incident and did not have any issues with him that would explain why Teeple attacked him in his cell. *Id.* at PageID.325–26. According to Labadie, the next day, another inmate told him that "Officer Dancy hired [Teeple] to attack [Labadie]," *id.* at PageID.326, and Labadie was transferred to a different correctional facility, *id.* at PageID.331. The inmate who told Labadie this information was never deposed, nor did he submit any kind of declaration or affidavit.

Defendants say that it was merely an accident that all of the cell doors opened in A Wing on March 6, 2023, and that as soon as the doors opened, corrections officers—including Defendants—"responded . . . immediately, and began securing all the segregation prisoners." ECF No. 56-3 at PageID.338; *see also* ECF No. 56-4 at PageID.343 ("I heard a loud yell and came out to assist staff with securing prisoners back into their cells."). Dancy and Hodges further aver that they did not know of any interaction between Labadie and Teeple, nor did they know or even suspect that Teeple was a threat to Labadie. *See* ECF Nos. 56-3 at PageID.338–39; 56-4 at PageID.343–44.

**B. Procedural History**

On August 8, 2023, Labadie, proceeding *pro se*, filed a complaint against Dancy, Hodges, and an unknown nurse. ECF No. 1 at PageID.1. Labadie brought one deliberate-indifference claim against the unknown nurse, *see id.* at PageID.6, and a failure-to-protect claim against Dancy and Hodges, *see id.* at PageID.7–8. The case was referred to Judge Altman for all pretrial proceedings. ECF No. 23.

In January 2024, Labadie filed a motion to amend his complaint to substitute the unknown nurse with "Dr. Angela Joseph," the now-identified healthcare provider who treated him after the March 6, 2023 altercation. ECF No. 14. On June 18, 2024, Judge Altman granted Labadie's motion to amend, added Dr. Joseph as a named defendant, and directed the U.S. Marshals to serve a copy of Labadie's complaint on Dr. Joseph. ECF No. 25. Dr. Joseph filed a motion to dismiss, ECF No. 36, which was granted on July 23, 2025, ECF No. 59.

In October 2024, Attorney Paul Matouka filed an appearance on behalf of Labadie. ECF No. 45. Discovery continued until March 17, 2025. *See* ECF No. 50. After the close of discovery, Defendants Dancy and Hodges filed a joint motion for summary judgment on April 17, 2025. ECF No. 56. Labadie, through counsel, opposed the motion. ECF No. 57.

On January 8, 2026, Judge Altman issued an R&R recommending that Defendants' motion for summary judgment be granted because Labadie had not

established either element of his remaining Eighth Amendment failure-to-protect claim against Dancy and Hodges, and Labadie had not pointed to any *record evidence* that created a genuine issue of fact for trial. *See generally* ECF No. 60. Labadie filed objections, ECF No. 61, with which Defendants disagree, ECF No. 62.

## II. LEGAL STANDARDS

### A. Objections to an R&R

When a party objects to a magistrate judge's report, the court must review *de novo* those portions of the report to which the party has objected. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3). To that end, the court must review at least the evidence that was before the magistrate judge. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the court may accept, reject, or modify the findings and recommendations. FED. R. CIV. P. 72(b)(3); *see also Peek v. Comm'r of Soc. Sec.*, 585 F. Supp. 3d 1014, 1017 (E.D. Mich. 2021). Moreover, the court may adopt the magistrate judge's report without specifying what it reviewed. *See Abousamra v. Kijakazi*, 656 F. Supp. 3d 701, 705 (E.D. Mich. 2023) (collecting cases).

### B. Motions for Summary Judgment

To prevail on summary judgment, a movant must identify record evidence showing that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). If the movant makes such a showing, then the burden shifts to the nonmovant to identify specific facts that create "a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted), which requires more than a mere "scintilla of evidence," *id.* at 252, and more than "metaphysical doubt," *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). All inferences must be reasonable, logical, and drawn in the nonmovant's favor to determine whether any party must prevail as a matter of law. *See Anderson*, 477 U.S. at 251–52.

### III. DISCUSSION

Labadie makes two objections to the R&R related to Judge Altman's conclusion that Labadie did not establish either of the required elements of an Eighth Amendment failure-to-protect claim.

The Eighth Amendment guarantees the right to be free from cruel and unusual punishment. U.S. CONST. amend. VIII. This right "requires prison officials to 'ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to] take reasonable measures to guarantee the safety of the inmates.'" *Zakora v. Chrisman*, 44 F.4th 452, 467 (6th Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials'

unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer*, 511 U.S. at 844–45 (cleaned up).

To establish an Eighth Amendment failure-to-protect claim, a plaintiff must satisfy both an objective and a subjective prong. *Zakora*, 44 F.4th at 468. Under the objective prong, the plaintiff must "demonstrate that 'the alleged mistreatment was objectively serious.'" *Id.* (quoting *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011)). And under the subjective prong, the plaintiff must "demonstrate that . . . 'the defendant subjectively ignored the risk to the inmate's safety.'" *Id.* (quoting *Bishop*, 636 F.3d at 766).

### A. Plaintiff's Objection 1: The Objective Prong

Labadie's first objects to Judge Altman's analysis of the objective prong of his failure-to-protect claim. *See* ECF No. 61 at PageID.545–47. But, as explained below, this objection will be overruled.

In the R&R, Judge Altman explained that in this case, to satisfy the first objective prong, Labadie had to "present enough evidence for a reasonable finder of fact to conclude that [Labadie] was at a substantial risk of serious harm when all the doors in the segregation unit were opened." ECF No. 60 at PageID.531. Judge Altman concluded that because Labadie did not show that *he specifically* faced a substantial risk of serious harm "*before* [his] injury" occurred, "[n]or that the [entire]

unit faced a substantial risk of serious harm at large," Labadie did not satisfy the objective prong of a failure-to-protect claim. *Id.* at PageID.531, 534.

Labadie argues that Judge Altman "erred by concluding that [he] could not establish the objective prong of his Eighth Amendment Claim . . . . because opening all the doors in a segregation cell block . . . exposes *all* of the prisoners to a risk of violence." ECF No. 61 at PageID.545 (emphasis in original). Labadie argues that Judge Altman "relie[d] on cases with facts that" are distinguishable from his case. *See id.* at PageID.546. But Labadie does not provide any case which has held that a general threat of all prisoners to a general population of all prisoners—especially absent evidence that violence permeated the prison—satisfies the objective prong.

Moreover, Judge Altman's legal reasoning and conclusion is sound, given the facts in this case. *See Caraway c. CoreCivic of Tenn., LLC*, 98 F.4th 679, 685 (6th Cir. 2024) ("The relevant constitutional 'injury' is the exposure to an objectively excessive risk, *not* any physical harm that befalls the inmate because of that risk."). Indeed, Judge Altman determined that the evidence showed that there was no reason for anyone to suspect that Labadie was specifically at risk of violence from Teeple or others. *See* ECF No. 60 at PageID.531. And Judge Altman determined there was no evidence which suggested that Teeple created a substantial risk of serious harm to the rest of the prisoners housed in the A Wing. *Id.* Finally, Judge Altman found that there was no evidence to suggest "that violence permeated the unit or prison

- 9 -

such that an assault could simply be expected to occur at random." *Id.* at PageID.534 (citing *Farmer*, 511 U.S. at 843).

Finding no error in Judge Altman's reasoning and conclusion, Labadie's first objection will be overruled.

### B. Plaintiff's Objection 2: The Subjective Prong

Labadie's second objection takes issue with part of Judge Altman's analysis of the subjective prong of his failure-to-protect claim. *See* ECF No. 61 at PageID.547–48. But, as explained below, this objection will be overruled.

Recall, the subjective prong requires the plaintiff to show that a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Because each official's liability must be based solely on that official's own knowledge and actions, [courts must] consider the subjective prong for each defendant separately." *Zakora*, 44 F.4th at 472. A plaintiff may demonstrate such awareness though "inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

In his objection, Labadie argues that Judge Altman erred by not considering circumstantial evidence when concluding that Labadie did "not demonstrate[]

- 10 -

sufficient evidence for a reasonable jury to conclude that the doors were opened intentional[ly], as opposed to accidentally," thus showing that Defendants disregarded a risk of substantial harm. ECF No. 61 at PageID.548. Specifically, Labadie argues that Judge Altman should have considered (1) "the facial expressions of the officers involved coupled with [(2) their] refusal to obtain medical treatment for [Labadie]," which Labadie asserts suggests deliberate intent. *Id.*

As to the first piece of evidence that Labadie says Judge Altman failed to consider, no video recording was ever submitted to this Court from which Judge Altman or the undersigned could consider the facial expressions of Defendants. Indeed, Judge Altman noted as much in her R&R. *See* ECF No. 60 at PageID.536 n. 3 (noting that although Labadie referred to a video recording of the incident, "no video was attached to his response or otherwise filed with the Court."). Thus, it was not an error for Judge Altman to not consider a piece of evidence that was never submitted. And as to the second piece of evidence Labadie says Judge Altman failed to consider, it is clear from the R&R that Judge Altman considered the delay in medical treatment throughout her analysis. *See* ECF No. 60 at PageID.524, 527, 535.

More broadly, the record supports Judge Altman's conclusion that neither Dancy nor Hodges disregarded a risk to Labadie's safety—or anyone else's— because there is no record evidence supporting Labadie's allegation that the cell doors were, in fact, opened intentionally.

- 11 -

As to Hodges, Judge Altman correctly noted that there was no evidence suggesting Hodges knew that the cell doors would be or were being opened, and that the evidence showed that he merely responded to the noise that resulted from the doors being opened. *See* ECF No. 60 at PageID.535 (citing ECF No. 56-4 at PageID.343–44). And because Labadie has not presented evidence to the contrary, there is no genuine dispute of fact about whether Hodges knew that the cell doors would be or were being opened, thus disregarding a substantial risk to inmate safety.

And as to Dancy, the record evidence shows that Dancy accidentally opened all the cell doors and then rushed to correct his mistake by immediately beginning to secure the A-Wing prisoners. *See* ECF No. 56-3 at PageID.338. Labadie asserts that it was not an accident and that Dancy intentionally opened the cell doors, but, as Judge Altman correctly noted, the primary (and most theoretically compelling) evidence Labadie relies on to support his theory was (1) a video that was never submitted to the court and (2) an unsubstantiated allegation from his complaint that another prisoner overheard Dancy bragging about the incident. ECF No. 60 at PageID.536; *see also* ECF No. 57 at PageID.393–94. And—importantly—neither of these pieces of evidence were in the record before Judge Altman. Thus, on the record that was before Judge Altman, she correctly concluded that Labadie could not demonstrate that Dancy knew of and disregarded a substantial risk to inmate safety when he accidentally opened the cell doors and immediately responded to remedy

- 12 -

it. *See Murr v. United States*, 200 F.3d 895, 902 n. 1 (6th Cir. 2000) (noting that a new argument cannot be raised in an objection to a magistrate judge's R&R). Therefore, Labadie's second objection will be overruled.

### C. Outcome

In sum, having conducted a *de novo* review of all relevant pleadings and filings in this case, Labadie's objections will be overruled, this Court will adopt Judge Altman's R&R in full, Defendants' motion for summary judgment will be granted, and the case will be dismissed.

### IV. CONCLUSION

Accordingly, it is **ORDERED** that Plaintiff's Objections, ECF No. 61, are **OVERRULED**.

Further, it is **ORDERED** that the Report and Recommendation, ECF No. 60, is **ADOPTED**.

Further, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 56, is **GRANTED**.

Further, it is **ORDERED** that Plaintiff's Complaint, ECF No. 1, is **DISMISSED WITH PREJUDICE.**

**This is a final order and closes the above-captioned case.**

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: March 24, 2026

- 13 -